**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **K.L., T.C.-1, T.C.-2, and B.C.**

**No. 20-0912** (Randolph County 19-JA-153, 19-JA-154, 19-JA-155, and 19-JA-156)

**MEMORANDUM DECISION**

Petitioner Mother S.L., by counsel Gregory R. Tingler, appeals the Circuit Court of Randolph County's July 17, 2020, order terminating her parental rights to K.L., T.C.-1, T.C.-2, and B.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Heather M. Weese, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating her as an abusing parent, denying her motions to suppress, and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2019, the DHHR filed a child abuse and neglect petition against petitioner based upon allegations of drug abuse and domestic violence. The petition indicated that the children's biological parents' parental rights had been previously terminated around 2015 and that petitioner, the maternal grandmother, adopted the children shortly thereafter. Regarding the instant proceedings, the DHHR alleged that it received a referral after then-six-year-old T.C.-1 complained that there was something in his shoe while at school. His teacher investigated the situation and, upon removing his shoe, a small baggie of what was presumed to be marijuana fell out. The teacher questioned the child, who stated that the substance was "weed," that it belonged

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Because two of the children share the same initials, we will refer to them as T.C.-1 and T.C.-2, respectively, throughout the memorandum decision.

1

to petitioner, and that petitioner sold weed for money. Law enforcement officers and Child Protective Services ("CPS") were informed of the matter.

A CPS worker spoke to T.C.-1, who made the same disclosures regarding the marijuana and further indicated that petitioner keeps the marijuana in her purse and in the couch and that she smokes it sometimes. The worker then spoke to T.C.-2, who did not make any disclosures regarding marijuana. However, T.C.-2 indicated that petitioner and then-fifteen-year-old K.L. "fight all the time" and that petitioner had previously punched K.L. in the face and left marks on her. During T.C.-2's interview, T.C.-1 began to talk about petitioner selling marijuana and T.C.-2 covered his mouth and stated, "grandma doesn't sell nothing." The children also reported that petitioner permitted the children's biological mother to reside in the home with them despite the fact that her parental rights had previously been terminated due to drug abuse.

The DHHR further alleged that K.L. had issues with truancy, abused drugs such as marijuana and methamphetamine, was in a sexual relationship with an adult, and assisted petitioner in selling marijuana out of the home. The DHHR learned this information after a CPS worker searched K.L.'s cellphone upon removal of the child from the home. The DHHR reported that the home was in poor condition and that the children smelled of cat urine. Petitioner waived her preliminary hearing.

The DHHR filed an amended petition against petitioner in February of 2020, adding allegations of physical violence between petitioner and K.L. The amended petition also alleged that petitioner permitted K.L. to be in a sexual relationship with an adult, and that she permitted K.L. to assist her in drug sales.

In March of 2020, petitioner filed a motion to suppress the phone records recovered from K.L.'s cell phone. Petitioner alleged that the cell phone belonged to her and that "[a]t no time did the authorities seek permission from [petitioner,] the owner of said phone[,] to electronically search it for use against her in this proceeding." Petitioner argued that the CPS worker's search of the phone was an unauthorized search and seizure and that the DHHR was unable to show any acceptable exception. Petitioner also filed a motion to suppress the introduction of the alleged marijuana found in T.C.-1's shoe, and a motion to dismiss the petition. Petitioner argued that the DHHR failed to preserve the alleged marijuana, failed to take pictures of it, and failed to have it tested in a laboratory to establish that it was, in fact, marijuana. Petitioner further argued that because the DHHR did not possess the alleged marijuana, the DHHR could not meet its burden and that the petition should be dismissed.

At an initial adjudicatory hearing held later that month, the circuit court denied petitioner's motion to suppress the phone records, finding that the Fourth Amendment does not apply to CPS workers in abuse and neglect proceedings and that the CPS worker observed the text messages while ensuring the safety of the children because of threats of interference with the removal and/or absconding of K.L.

The DHHR presented the testimony of T.C.-1's principal who testified that T.C.-1's teacher observed a substance presumed to be marijuana fall out of the child's shoe. The principal stated that the child identified the substance as weed, stated that it belonged to petitioner, and

2

further indicated that petitioner sold weed for money. The child also disclosed where petitioner stored the substance.

A law enforcement officer testified that he responded to the school after receiving a call from the principal regarding locating marijuana that had fallen out of a child's shoe. The officer testified that he observed the substance and that it did appear to be marijuana. The officer testified that he later went to petitioner's home and that there were no signs of marijuana or odor of marijuana when he stood in the front entry of the home. The officer testified that following the investigation, he destroyed the substance.

An employee from North Central Community Corrections testified that following the petition's filing, petitioner submitted to a drug screen around November of 2019, which was positive for marijuana. The employee testified that petitioner had submitted negative screens since January 29, 2020.

A school-based probation officer testified regarding K.L.'s truancy issues. The probation officer testified that the child had several absences from school and that she tried to contact petitioner about the matter. Petitioner missed meetings with the probation officer and refused in-home services. Eventually, petitioner permitted K.L. to enter into a diversion program. The probation officer testified that while in the diversion program, K.L. tested positive for marijuana and methamphetamine and admitted to being in a romantic relationship with an adult. The probation officer testified that petitioner minimized K.L.'s drug use and would not permit the probation officer to work with the child over the summer.

A CPS worker testified regarding removing the children. The worker stated that law enforcement officers arrived at the home to assist her and that when she arrived a short time later, both petitioner and K.L. were "carrying on" and screaming. Officers eventually removed K.L. from the home because she was upsetting the younger children, and the CPS worker observed her calling various people and reporting the situation. The CPS worker testified that she removed the phone from K.L.'s possession at that time because she was concerned that K.L. was attempting to have someone come to retrieve her or that she was attempting to run away. The CPS worker stated that she opened the phone to look for messages regarding her concerns but found pictures of marijuana and messages that indicated the child was aiding petitioner in selling marijuana. The CPS worker further testified that K.L. disclosed that petitioner allowed her to have contact with her biological mother and that she abused methamphetamine with her biological mother. Following this testimony, the circuit court continued the matter, which was reconvened on June 1, 2020. Petitioner testified on her own behalf.

Ultimately, the circuit court adjudicated petitioner as an abusing and neglecting parent. The circuit court found that there was clear and convincing evidence that there was marijuana use in the home, that petitioner engaged in physical altercations with K.L., and that marijuana sales occurred in the home, some of which were with K.L.'s assistance. The circuit court found that petitioner acknowledged abusing marijuana but denied that she engaged in the sale of marijuana. The circuit court further found that petitioner allowed the children to remain in contact with the biological mother, which was not in their best interests. The circuit court found that it was unnecessary to address whether the substance found in T.C.-1's shoe was, in fact, marijuana given

3

the testimony of marijuana use in the home, the child's ability to identify the substance, and his knowledge about its use in the home. Thereafter, petitioner filed a motion for a post-adjudicatory improvement period.

In July of 2020, the circuit court held a dispositional hearing. The DHHR requested that the circuit court take judicial notice of the testimony and evidence presented at the previous hearings in the matter. Petitioner presented the testimony of three friends, all of whom testified that petitioner was an appropriate caregiver and that she provided everything the children needed. The witnesses stated that they never observed anything inappropriate in their home and that petitioner and the children shared a strong bond. Petitioner's mother also testified that she was a good caretaker, provided for the children, and had a strong bond with them.

Petitioner testified in support of her motion for an improvement period and stated that she would comply with its terms and conditions. Petitioner stated that she was willing to do anything to regain custody of the children and that she had a strong bond with them. However, petitioner denied having marijuana in her home and claimed that the CPS worker fabricated the children's disclosures.

Following testimony, the circuit court found that the evidence clearly established that petitioner loved the children. The circuit court noted, however, that petitioner permitted K.L. to be in a relationship with an adult male and allowed drugs to be in and sold from her home. The circuit court found that the children had knowledge of drug use and the sale of drugs in the home and that K.L. facilitated drug sales. The circuit court found that, other than stating that she would comply with services, petitioner failed to acknowledge "what took place in the home and the impact on the children." As such, the circuit court found that there was no indication that petitioner would comply with an improvement period. The circuit court denied petitioner's motion for an improvement period and terminated her parental rights upon finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was necessary for the children's welfare. Petitioner appeals the July 17, 2020, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the

---

[2]The children were placed in foster homes and the permanency plan for the children is adoption in those respective homes.

evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motions to suppress. Petitioner states that her motion to suppress the introduction of the alleged marijuana should have been granted because the DHHR failed to preserve, test, or photograph the substance. Petitioner contends that not a single witness could positively identify the substance found in T.C.-1's shoe, but it was nevertheless assumed to be an illegal substance supporting a finding of abuse and neglect. Petitioner argues that by depriving her of the opportunity to examine or test the alleged marijuana, she was denied an opportunity to adequately defend herself. Given the foregoing, petitioner concludes that the circuit court erred in not excluding evidence of the alleged marijuana.

Petitioner further contends that the circuit court erred in refusing to suppress K.L.'s phone records when no search warrant was obtained, violating her Fourth Amendment rights. Petitioner argues that the CPS worker wrongfully searched K.L.'s phone and used the information found to make allegations against petitioner. Petitioner contends that the DHHR's argument below that exigent circumstances were present is without merit as the CPS worker read messages preceding the date of the removal to support its allegations. While petitioner acknowledges that this Court has declined to extend the exclusionary rule in civil matters, she urges this Court to "adopt a limited exclusionary rule that prohibits the introduction of evidence obtained without a warrant when the evidence exceeds the scope of the exigent circumstances at hand." Petitioner argues that because this evidence should have been suppressed, the circuit court erred in adjudicating her as an abusing parent as, absent this evidence, there was insufficient evidence presented to support her adjudication.

First, we find that petitioner is not entitled to relief because the circuit court specifically noted that confirmation that the substance found in T.C.-1's shoe was marijuana was not relevant to her adjudication. Instead, the circuit court found relevant T.C.-1's ability to identify a substance as marijuana, knowledge that the substance was used in the home, and knowledge that petitioner sold the substance for money. T.C.-1 consistently disclosed this information to the CPS worker and during a Child Advocacy Center ("CAC") interview performed upon the children's removal. Further, petitioner admitted to using marijuana at the time of the children's removal and admitted to having a history of marijuana use during the biological mother's case, which resulted in the temporary removal of the children from her care. Accordingly, to the extent petitioner argues the circuit court erred in admitting testimony indicating that the substance found in the child's shoe was marijuana, we find no error as the circuit court did not make any findings that the substance was marijuana, and T.C.-1's extensive knowledge of marijuana was sufficient to help form a basis for adjudication.

Second, we find no error in the circuit court's admission of testimony regarding any photographs of K.L.'s text messages from her phone. This Court has declined to extend the exclusionary rule to child abuse and neglect proceedings because of the potential harm to the children:

While the mother urges us to extend the exclusionary rule to abuse and neglect proceedings because parental rights are implicated, we decline to do so because of the potential harm to the children. *See Abid v. Abid*, 133 Nev. 770, 406 P.3d 476, 481 (2017) (explaining that courts routinely hold that evidence obtained in violation of [the] Fourth Amendment is admissible in abuse and neglect proceedings because "the substantial social costs of ignoring children's safety exceeds the minimal additional deterrence achieved by applying the exclusionary rule" (internal quotations and citations omitted)); *In re Mary S.*, 186 Cal.App.3d 414, 230 Cal. Rptr. 726, 728 (1986) ("[T]he potential harm to children in allowing them to remain in an unhealthy environment outweighs any deterrent effect which would result from suppressing evidence unlawfully seized." (internal quotation marks omitted)).

*See In re N.R.*, 242 W. Va. 581, 597 n.24, 836 S.E.2d 799, 815 n.24 (2019). Accordingly, we find no error in the circuit court's refusal to extend the exclusionary rule to this matter and further find that petitioner is entitled to no relief in this regard.

Additionally, having reviewed the record, we find no error in the circuit court's decision to adjudicate petitioner as an abusing parent. We have previously held as follows:

At the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected . . . . The findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing evidence.

*In re F.S.*, 233 W. Va. 538, 544, 759 S.E.2d 769, 775 (2014). This Court has explained that "'clear and convincing' is the measure or degree of proof that will produce in the mind of the factfinder a firm belief or conviction as to the allegations sought to be established." *Id.* at 546, 759 S.E.2d at 777 (citation omitted). However, "the clear and convincing standard is 'intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases.'" *Id.* (citation omitted). Further, West Virginia Code § 49-1-201 defines "abused child" as "[a] child whose health or welfare is being harmed or threatened by ... [a] parent ... who knowingly or intentionally inflicts, attempts to inflict, or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." Moreover, a "neglected child" is defined as a child

[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian.

*Id.*

Even assuming that the substance found in T.C.-1's shoe was not marijuana, we find that sufficient evidence existed upon which to adjudicate petitioner as an abusing parent. The record

shows that a six-year-old child had extensive knowledge of marijuana; knew that petitioner smoked the substance, stored it in her purse, and tucked it in her couch; and knew that petitioner sold the substance for money. Testimony further demonstrated that petitioner permitted K.L. to use drugs, permitted K.L. to facilitate drug sales, permitted her to see her biological mother, and permitted her to be in a romantic and sexual relationship with an adult male. Further, petitioner engaged in physical altercations with K.L., which was either observed or overheard by the younger children, and they reported seeing marks on K.L.'s face as a result. Accordingly, it is clear that sufficient evidence existed to adjudicate petitioner as an abusing and neglecting parent.

Petitioner also argues that the circuit court erred in terminating her parental rights. According to petitioner, the evidence did not support the circuit court's conclusion that there was no reasonable likelihood that she could correct the conditions of abuse or neglect in the near future. Petitioner argues that she was never granted an improvement period despite admitting to using marijuana and other allegations contained in the petition. Petitioner claims that she submitted to drug screens during the case and remained "consistently clean" from January of 2020 through March of 2020, demonstrating that she is able to cease using marijuana rather quickly. Petitioner further states that she does not dispute that K.L. used drugs while in her care, but claims that, contrary to the DHHR's argument, she did not approve of the child's drug use and timely sought assistance for the child. Petitioner further argues that she did not approve of the child's relationship with her adult boyfriend, evidenced by the fact that she engaged in two altercations with the child over that issue. Petitioner acknowledges that a few physical altercations between her and K.L. occurred, but that they "did not rise to the level of severity suggested by the DHHR." Indeed, K.L. denied any altercations between her and petitioner during her CAC interviews. Accordingly, petitioner contends that the evidence was simply insufficient to terminate her parental rights or that, at a minimum, she should have been granted an improvement period.

We find that the record reveals no abuse of discretion in denying petitioner an improvement period. Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements. . . ."); *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."). This Court has established that "[t]he circuit court has the discretion to refuse to grant an improvement period when no improvement is likely." *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). While petitioner states that she admitted to using marijuana, the record reveals that petitioner minimized her actions and the effects of the same upon the children. Despite T.C.-1's consistent disclosures that petitioner sold marijuana in the home, petitioner continued to deny the same throughout the proceedings. Although K.L. initially denied facilitating drug sales for petitioner during her CAC interview, the CPS worker testified that K.L. eventually admitted that she had facilitated the sales for petitioner, that petitioner permitted her to be around her biological mother, and that she abused drugs with her biological mother. However, petitioner denied these disclosures and claimed that the CPS worker was lying and fabricating the allegations against her. As this Court has long held, "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation

7

omitted). Because petitioner rendered the conditions of abuse and neglect untreatable, we find no error in the denial of her motion for an improvement period.

We likewise find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the children. Further, "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." W. Va. Code § 49-4-604(d).

As noted above, petitioner denied that she sold drugs in the home despite the disclosures of T.C.-1 and K.L. and further minimized the effect her actions had on the children. Petitioner also minimized her physical altercations with K.L. Moreover, while petitioner claims that she timely sought assistance for K.L.'s drug abuse, the child's school probation officer testified that petitioner repeatedly cancelled appointments with her and refused in-home services for the child, eventually removing her from the program during summer months. Again, petitioner's refusal to acknowledge the conditions of abuse and neglect resulted in those conditions being untreatable, which fully supports the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Given petitioner's inability to correct the conditions of abuse and neglect due to her refusal to acknowledge them, it is clear that the circuit court did not err in making this finding. Additionally, the court found that the children's welfare required termination of petitioner's rights. Under West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental rights upon these findings. Moreover,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on this evidence, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 17, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton